UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAIRO HERNANDEZ, *et al.*,<br><br>Defendants._____/ | No. CR-14-0120 EMC<br><br>**ORDER DENYING DEFENDANTS'<br>MOTION TO DISMISS COUNTS ONE<br>THROUGH THREE OF THE<br>SUPERSEDING INDICTMENT**<br><br>**(Docket No. 391)** |

### I. INTRODUCTION

Defendant Jairo Hernandez and his remaining co-defendants (collectively, Defendants) move to dismiss Counts One through Three of the Superseding Indictment, which counts are common to all Defendants. *See* Docket No. 391 (Motion); Docket No. 241 (Superseding Indictment) (hereafter Indictment). Alternatively, the Defendants argue that the Government is constructively amending the Indictment, and therefore seek disclosure of the grand jury transcripts and the instructions given to the grand jury with respect to Counts One through Three.

Defendants are charged in Count One of the Superseding Indictment with conspiring to violate the Racketeer Influenced and Corrupt Organizations (RICO) statute, in violation of 18 U.S.C. section 1962(d). Indictment at 52.[1] Defendants are charged in Count Two with conspiracy to commit murder in aid of racketeering activity, and in Count Three with conspiracy to commit assault with a dangerous weapon in aid of racketeering activity, both in violation of the Violent Crimes in

---

[1] Because the Superseding Indictment does not use consistent pagination, the Court cites to the page number generated by ECF that is listed on the document header.

1  Aid of Racketeering Activity (VICAR) statute.  *See* Indictment at 57-59 (alleging violations of 18
2  U.S.C. §§ 1959(a)(5) and 1959(a)(6)).  According to Defendants, Counts One through Three must be
3  dismissed because the Indictment fails to allege sufficient factual details regarding the "nature of the
4  agreement or agreements at the heart of the charged conspiracy or conspiracies."  Docket No. 449
5  (Reply Br.) at 2; *see also* Reply Br. at 5 (arguing that "the Indictment fails to provide the
6  *rudimentary* factual detail required to inform him of the nature of the *agreement* he is charged with
7  entering into") (emphases in original).  For the reasons explained below the Court disagrees, and
8  holds that the Superseding Indictment contains sufficient factual detail to survive Defendants'
9  motion to dismiss.  The Court also finds that the Defendants have not made the necessary showing to
10 obtain grand jury instructions or transcripts on the basis of alleged constructive amendment.

## II. BACKGROUND

12  Counts One through Three of the Government's Superseding Indictment charge Hernandez,
13 along with his sixteen other co-defendants,[2] with three racketeering conspiracy counts: Count One
14 (RICO Conspiracy); Count Two (VICAR Conspiracy to Commit Murder in aid of Racketeering
15 Activity); and Count Three (VICAR Conspiracy to Commit Assault With a Dangerous Weapon in
16 aid of Racketeering Activity).  Indictment at 52-60.  Without going into unnecessary detail, the
17 alleged racketeering enterprise at the heart of the charged conspiracies is the "19th Street Sureños,
18 including its leadership, members, and associates, such as the members of the 16th Street Sureños."
19 *Id.* at 55.  According to the Indictment, the 19th Street Sureños is a "predominately Hispanic street
20 gang" whose members "engage in criminal activity, including murder, attempted murder, narcotics
21 distribution, assault, robbery, and obstructing justice by threatening and intimidating fellow gang
22 members and others whom they believe to be cooperating with law enforcement."  *Id.* at 52, 54.  The
23 Indictment alleges that the purposes of the 19th Street Sureños include "[p]reserving and protecting
24 the power, territory, reputation, and profits of the enterprise through the use of intimidation,
25 violence, threats of violence, assaults and murder" and providing "financial support and information

---

[2] A number of these co-defendants have since reached plea deals with the Government.

to 19th Street Sureños gang members and associates, including those members and associates who are incarcerated." *Id.* at 55.

Count One specifically alleges that Defendants conspired to "conduct and participate, directly and indirectly, in the conduct of the affairs of the 19th Street Sureños enterprise through a pattern of racketeering activity . . . which pattern of racketeering activity consisted of: (a) multiple acts and threats involving murder . . . (b) multiple acts involving dealing in controlled substances . . . and (c) multiple acts . . . relating to tampering with a witness, a victim or an informant [or] relating to obstruction of justice." Indictment at 56-57. The Indictment charges that "each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise." *Id.* at 57. The only conspirators identified by name in the Superseding Indictment are the other defendants originally charged in this case. *Id.* at 56. According to the Government, the charged conspiracy began "at least [by] the early 1990s and continu[es] until up through and including the present." *Id.* The charged conspiracy allegedly took place "in the Northern District of California and elsewhere. . . ." *Id.* The Indictment more specifically alleges that the 19th Street Sureños "claim the area centered around 19th Street and Mission Street in the Mission District of San Francisco as its territory . . . includ[ing] the area bounded by 19th Street to the south, 16th Street to the north, Folsom Street to the east, and Dolores Street to the west." *Id.* at 52. The 19th Street Sureños have also apparently laid claim to Dolores and Franklin Square Parks. *Id.* The 19th Street Sureños's "principal rivals" as identified as "various Norteños gangs," and the Indictment alleges that these gangs are at "war" with each other. *Id.* at 53. 19th Street Sureños gang members are instructed to "attack members of the other side," and the "more brazen the attack, the greater the respect that is given to the attacker by fellow gang members." *Id.*

Count Two charges that Hernandez, his co-defendants, and other unnamed co-conspirators conspired "with each other to commit murder" and specifically to "kill actual or suspected Norteños, actual or suspected members of other gangs, individuals who defied the will of the 19th Street Sureños, and individuals suspected of cooperating with law enforcement." Indictment at 58-59. According to the Government, Hernandez and his co-conspirators so acted "for the purpose of gaining entrance to and maintaining and increasing position in the 19th Street Sureños." *Id.* at 58.

The Government alleges that the conspiracy began in the early 1990s and continues to the present in the Northern District of California "and elsewhere." *Id.*

Count Three alleges that Hernandez, his co-defendants, and other unnamed co-conspirators conspired "to assault with firearms, knives, and other dangerous weapons actual and suspected Norteños, actual and suspected members of other gangs, individuals who defied the will of the 19th Street Sureños, and individuals suspected of cooperating with law enforcement." Indictment at 60. As with Counts One and Two, the alleged conspiracy is claimed to have begun sometime in the early 1990s, continue through the current day, and operate in the Northern District of California and "elsewhere." *Id.* at 59. As with Count Two, the Indictment alleges that Hernandez and his co-conspirators agreed to commit assault with a dangerous weapon "for the purpose of gaining entrance to and maintaining and increasing position in the 19th Street Sureños, an enterprise engaged in racketeering activity. . . ." Indictment at 59.

In the remaining counts of the Indictment (*i.e.*, Counts Four through Nineteen), the Government alleges various substantive criminal offenses against each of the Defendants, including various specific murders and assaults that the Defendants are alleged to have committed "for the purpose of gaining entrance to, and increasing and maintaining position in, the 19th Street Sureños. . ." *See* Indictment at 60-68. For instance, Hernandez and his co-defendant Vasquez are charged in Count Five with Murder in Aid of Racketeering, which charge stems from an alleged homicide that occurred on August 30, 2011.[3] Indictment at 61. Importantly, and as noted above, each of the Defendants are charged in the Indictment not only with conspiracy but also with committing at least one substantive crime (*i.e.*, a non-conspiracy crime) allegedly undertaken in aid of the racketeering enterprise. *See, e.g.*, Indictment at 62 (charging Defendants Garcia-Gomez and Real in Count Eight with Assault with a Dangerous Weapon in Aid of Racketeering stemming from an incident occurring on May 31, 2013).

---

[3] Counts Six and Seven are similarly predicated on the August 30 homicide. Specifically, Hernandez and Vasquez are charged in Count Six with Using and Carrying a Firearm During and in Relation to a Crime of Violence and Possessing a Firearm in Furtherance of a Crime of Violence, and are charged in Count Seven with Use of a Firearm Causing Murder.

Earlier in this litigation, a number of defendants filed motions for bills of particulars in an attempt to learn more about the precise conduct underlying the charges in Counts One through Three of the Indictment. On December 19, 2014, Magistrate Judge Cousins granted in part and denied in part these motions. Docket No. 297. After the Government provided its first bill of particulars on January 16, 2015, Docket No. 311, certain defendants became concerned that the Government was improperly withholding information under the protective order that was otherwise responsive to Judge Cousin's order. After litigating the dispute, Judge Cousins ordered the Government to file a supplemental bill of particulars with respect to Counts One through Three that would:

- clarify *when* each defendant is alleged to have first joined the conspiracy; and
- provide details of *who* was present at meetings in which murders, attempted murders, or assaults with dangerous weapons were discussed, *when* and *where* such meetings took place, *what* was said at the meetings, and *what* each defendant did or said to indicate participation in the conspiracy.

Docket No. 340 (emphases in original). The Government filed its supplemental bill of particulars on February 25, 2015, and remains under an obligation to further supplement its bill of particulars if it learns of additional responsive information. *See* Docket No. 353.

Hernandez filed the instant motion to dismiss Counts One through Three of the Indictment on April 20, 2015. Docket No. 391. Pursuant to an earlier oral order of this Court, his motion was deemed joined by all of his co-defendants unless they filed a notice opting-out. *See* Docket No. 455 (formally memorializing earlier order). No defendant opted-out. The Government opposed the motion to dismiss, Docket No. 439, and Hernandez filed a reply. Docket No. 449. The Court heard oral argument on July 2, 2015. *See* Docket No. 456.

### III.   DISCUSSION

A.   Legal Standards

    1.   Motion to Dismiss

An indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The sufficiency of an indictment is to be measured by two main criteria: "[F]irst, whether the indictment contains the elements of the

offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Russell v. United States*, 369 U.S. 749, 763-64 (1962) (internal quotation marks and citations omitted); *see also United States v. Fernandez*, 388 F.3d 1199, 1217-18 (9th Cir. 2004) ("Generally, an indictment is sufficient if it sets forth the elements of the charged offense so as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the offense charged.") (citation omitted). *Russell*, 369 U.S. at 768. "Because it is a drastic step, dismissing an indictment is a disfavored remedy." *United States v. Rogers*, 751 F.2d 1074, 1076-77 (9th Cir. 1985) (citing *United States v. Blue*, 384 U.S. 251, 255 (1966)).

The Ninth Circuit has repeatedly made clear that "an indictment setting forth the elements of the offense is generally sufficient" to survive a motion to dismiss. *See Fernandez*, 388 F.3d at 1219. In fact, "[i]n the Ninth Circuit, '[t]he use of a 'bare bones' information – that is one employing the statutory language alone – is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished.'" *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) (quoting *United States v. Crow*, 824 F.2d 761, 762 (9th Cir. 1987)). Moreover, the Ninth Circuit has instructed that an indictment "'should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.'" *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007) (quoting *United States v. King*, 200 F.3d 1207, 1217 (9th Cir. 1999)).

In evaluating Defendants' motion to dismiss, this Court is "bound by the four corners of the indictment in analyzing whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (citations omitted). Consequently, it is well settled that "a bill of particulars cannot save an invalid indictment." *Russell*, 369 U.S. at 770; *see also United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) ("We begin our analysis stating the established rule that a bill of particulars cannot save an invalid indictment."). This is because "the purpose of a bill of particulars is to clarify *ambiguities* in an indictment," *United States v. Ablett*, No. C 09-749 RS, 2010 WL 3063145, at *3 (N.D. Cal. Aug. 3, 2010) (emphasis added), so as to "inform the defendant

of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes." *U.S. v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (citation and internal quotation marks omitted).

Where an indictment is not "ambiguous," but rather is simply devoid of sufficient allegations to meet the standard of Rule 7, the proper remedy is dismissal of the indictment, not preparation of a bill of particulars. *See Cecil*, 608 F.2d at 1296 ("If a bill of particulars were allowed to save an insufficient indictment, the role of the grand jury as intervenor would be circumvented."). The converse is also true: where an indictment satisfies the fairly forgiving standard of Rule 7, but the defendant nevertheless legitimately needs to know more about the precise criminal conduct alleged in order to prepare for trial, the proper remedy is preparation of a bill of particulars, not dismissal of the charges. *See, e.g.*, *Ablett*, 2010 WL 3063145, at *6 (denying defendant's motion to dismiss the indictment, but granting defendant's alternative request for a bill of particulars); *United States v. Martinez*, No. CR 13-794-WHA, 2014 WL 998183, at *1 (N.D. Cal. Mar. 12, 2014) (same).

2. <u>Disclosure of Grand Jury Transcripts</u>

Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) provides that the Court may authorize disclosure of grand jury transcripts "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). "A trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a 'particularized need exists . . . which outweighs the policy of secrecy.'" *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (ellipsis in original)(quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959)). Specifically, the Court must consider whether (1) disclosure of the desired grand jury material will avoid a possible injustice; (2) the need for disclosure is greater than the need for continued secrecy; and (3) only the relevant parts of the transcripts will be disclosed. *See United States v. Perez*, 67 F.3d 1371, 1381 (9th Cir. 1995), *vacated in part*, *United States v. Perez*, 116 F.3d 840 (9th Cir. 1997). The decision to grant a

defendant's request for grand jury transcripts is "within the sound discretion of the trial court." *Walczak*, 783 F.2d at 857.

B. <u>Counts One Through Three Are Adequately Pleaded</u>

Hernandez argues that Counts One through Three should be dismissed because they do not contain sufficient factual content to reasonably shed light on what Hernandez and his co-defendants need to be "prepared to meet" at trial. *Russell*, 369 U.S. at 763. More specifically, Defendants argue that the Indictment fails to allege sufficient factual details regarding the precise "nature of the agreement or agreements at the heart of the charged conspiracy or conspiracies." Reply Br. at 2. While Defendants' argument is colorable, the Court ultimately concludes that Counts One through Three are sufficiently pleaded.

1. <u>Count One – Racketeering Conspiracy</u>

Count One charges that the Defendants violated 18 U.S.C. section 1962(d), which "criminalizes conspiracy to commit a substantive RICO violation." *United States v. Ortiz*, No. CR-12-119-SI, Docket No. 845 at 3 (N.D. Cal. Dec. 27, 2013); *see also Martinez*, 2014 WL 998183, at *2 ("The mere agreement itself – here, to violate Section 1962(c) – is what Section 1962(d) forbids."). Importantly for the purposes of this motion, it "is not necessary to prove that a defendant committed a substantive RICO violation under § 1962(d); instead 'proof of an agreement the objective of which is a substantive violation of RICO (such as conducting the affairs of an enterprise through a pattern of racketeering) is sufficient to establish a violation of section 1962(d).'" *Ortiz*, Docket No. 845 at 3 (quoting *United States v. Tille*, 729 F.2d 615, 619 (9th Cir. 1984)). Put differently, in order to obtain a conviction under section 1962(d), the Government merely has to prove the agreement itself: As Judge Alsup has explained, "racketeering conspiracy has 'no requirement of some overt act or specific act,' much less any requirement that the acts be 'related' or 'continuous.'" *Martinez*, 2014 WL 998183, at *2 (quoting *Salinas v. United States*, 522 U.S. 52, 63 (1997)). "Thus, all that an indictment for violation of 18 U.S.C. §1962(d) must allege[] is that the defendant knowingly joined a conspiracy the objective of which was to operate that enterprise through an identified pattern of racketeering activity." *Ortiz*, Docket No. 845 at 3 (internal quotation marks and citations omitted).

The Indictment in this case contains sufficient factual details regarding Defendants' participation in an alleged conspiracy to violate RICO. First, Count One lays out in considerable detail the specifics of the alleged racketeering enterprise; the 19th Street Sureños. *See* Indictment at 52-56. Indeed, the Indictment contains fourteen paragraphs of detailed factual allegations about the 19th Street Sureños, including its alleged purposes (*e.g.*, to increase its power "through the use of intimidation, violence, threats of violence, assaults, and murder") and nature of the enterprise (*e.g.*, members are expected to "protect the gang and to enhance its reputation . . . us[ing] any means necessary to force respect from those who show disrespect, including acts of intimidation and violence"). *See* Indictment at 54-55. Second, each Defendant is alleged to be "employed by and associated with the 19th Street Sureños," and to have "agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise." Indictment at 56-57. Third, the Indictment lists a number of specific types of racketeering activity that the Defendants or their compatriots are alleged to have committed or conspired to commit, such as murder, robbery, dealing in controlled substances, and witness tampering. *Id*. at 57. And finally, the Indictment alleges that Hernandez and his sixteen named co-defendants each "unlawfully, knowingly, and intentionally did conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the 19th Street Sureños enterprise through a pattern of racketeering activity" in the Northern District of California, beginning by at least the early 1990s. *Id*. at 56. As both Judge Illston and Judge Alsup have recognized when faced with challenges to RICO conspiracy indictments largely identical to the one at issue here, such "allegations are sufficient to establish a viable allegation of RICO conspiracy under § 1962(d)." *Ortiz*, Docket No. 845 at 4 (denying motion to dismiss largely identical RICO indictment to the one challenged here); *Martinez*, 2014 WL 998183, at *2-3 (same).

Hernandez argues that this case is distinguishable from *Ortiz* and *Martinez* because Count One in the current Indictment does not contain any factual specifics regarding the *exact* substantive crimes or affirmative acts that he or his co-defendants are alleged to have agreed to commit. *See Ortiz*, Docket No. 845 at 4 (explaining that the RICO conspiracy count "alleges that [defendant] personally acted in furtherance of the enterprise's activities by fighting with and shooting at rival

9

gang members, and providing weapons for other members to use"); *Martinez*, 2014 WL 998183, at *2 (explaining that the RICO conspiracy count contained "specific allegations as to activities that [defendant] took in furtherance of the VSP gang"). Rather, according to Defendants, the Indictment impermissibly lists just the *types* of crimes at the heart of the alleged conspiracy, such as murder and witness tampering.

As an initial matter, it is not clear that the additional factual matter pleaded in the indictments in *Ortiz* and *Martinez* was necessary to survive a motion to dismiss. *See Fernandez*, 388 F.3d at 1219 (holding that "an indictment setting forth the elements of the offense is generally sufficient" to survive a motion to dismiss). In any event, the Superseding Indictment here contains such specific factual allegations, albeit pleaded in later counts of the Indictment. For instance, Count Five of the Superseding Indictment alleges that on August 30, 2011, Hernandez and a co-defendant murdered "Victim-1" for "the purpose of gaining entrance to, and increasing and maintaining position in, the 19th Street Sureños, an enterprise engaged in racketeering." Indictment at 61. And Count Seventeen alleges that some of Hernandez's purported co-conspirators murdered "Victim-10" on July 19, 2014, for the same purpose. Indictment at 67. While the allegations of Counts Four through Nineteen are not expressly incorporated by reference into the allegations of Count One, the allegations of Count One are expressly incorporated into the later counts. Moreover, each of the substantive counts alleges that *all* the underlying criminal activity charged was performed in furtherance of the racketeering activity of the 19th Street Sureños. Taken together, the only fair reading of the Indictment is that the conspiracy alleged in Count One includes at least an agreement to commit the substantive crimes charged in the remaining counts of the Indictment. *See Berger*, 473 F.3d at 1103 (instructing that an indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied"). Hence, just as in *Ortiz* and *Martinez*, these more specific factual allegations inform the RICO conspiracy count, and thus accord "defendants adequate notice of the charges against them." *Martinez*, 2014 WL 998183, at *3 (citing *Cecil*, 608 F.2d at 1297).

Defendants argue that the substantive criminal allegations contained in Counts Four through Nineteen "must stand or fall on their own merits; they contribute nothing to an understanding of the

broad conspiracy allegation in Count One." Reply Br. at 6. Notably, the Defendants do not cite any legal authority in support of their argument that the Court cannot look to the allegations made in other counts in the Indictment to determine whether the Indictment adequately informs the Defendants of the nature of the RICO conspiracy charged in Count One. This lack of authority is unsurprising, however, because the law is clear that an indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." *Berger*, 473 F.3d at 1103. Reading the Indictment in this case "in its entirety," *id.*, as this Court is required to do, the Court is convinced that this case is not materially distinguishable from *Ortiz* and *Martinez* because the Indictment *does* contain specific factual allegations regarding the precise nature of the charged racketeering conspiracy.

Defendants' also claim that Count One is insufficiently pleaded because the Indictment does not plead with any specificity the alleged operative dates of the conspiracy. *See* Mot. at 15. Rather, the Indictment claims that the conspiracy began operating "since at least the early 1990s" and continues to operate "until up through and including the present." Indictment at 56. Defendants cite *Cecil* for the proposition that an indictment that "fails to place the conspiracies within any time frame" or which is "open-ended in both directions," is insufficient as a matter of law. *Cecil*, 608 F.2d at 1297 (dismissing conspiracy indictment that alleged that the operative conspiracy began "on or before July, 1975" and continued thereafter "until on or after October, 1975"). Defendants' reliance on *Cecil* is misplaced.

First, the conspiracy allegation in Count One is *not* "open-ended in both directions" as it was in *Cecil* – the Indictment here alleges that the conspiracy continued until "the present" *i.e.*, the day the grand jury returned the Indictment, or November 6, 2014. *See* Indictment at 76. But even more fundamentally, "'uncertainty regarding a conspiracy's beginning and ending dates does not render an indictment fatally defective so long as overt acts alleged in the indictment adequately limit the time frame of the conspiracy.'" *Ablett*, 2010 WL 3063145, at *2 (quoting *United States v. Forrester*, 616 F.3d 929, 941 (9th Cir. 2010)); *see also Martinez*, 2014 WL 998183, at *3 (denying motion to dismiss because the indictment "specifies enough dates and details to inform [defendants] of these alleged acts, satisfying even *Cecil*"). Here, Counts Four through Nineteen provide a

number of dates (from 2011 to 2014) on which racketeering-related crimes occurred that help place the conspiracy charge within a specific time frame. Indictment at 60-68. As Judge Alsup found in the *Martinez* case, this is sufficient to survive a motion to dismiss. *Martinez*, 2014 WL 998183, at *3.[4]

At bottom, the Court finds that Count One adequately alleges that Hernandez and his co-defendants conspired to violate RICO in violation of section 1962(d). Thus, Defendants' motion to dismiss Count One is denied.

2. Counts Two and Three – VICAR Conspiracy

Hernandez and his co-defendants are charged in Count Two with conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. section 1959(a)(5), and in Count Three with conspiracy to commit assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. section 1959(a)(6). Indictment at 57, 59. The analysis of the sufficiency of these counts is largely the same as with respect to Count One, and the same result is warranted – Defendants' motion to dismiss must be denied.

In order to survive a motion to dismiss the VICAR conspiracy counts, "[a]ll the indictment need allege is that [Defendants'] entered into an agreement to commit murder and an agreement to commit assault with a deadly weapon, to gain entrance to, or to maintain or increase [their] standing in, a racketeering enterprise." *Ortiz*, Docket No. 845 at 6. Here, there can be no dispute that the Indictment alleges such facts, and in so doing "track[s] the language of Section 1959(a)." *Martinez*, 2014 WL 998183, at *4. Moreover, as in both *Ortiz* and *Martinez*, where the court denied motions to dismiss similar VICAR conspiracy counts, the Indictment "incorporates by reference the preceding factual allegations establishing the existence of a racketeering enterprise. Thus, both Counts sufficiently allege that [Defendants] committed these conspiracies with the requisite racketeering motive – that is, with the intent to further [their] position in, or gain entrance to, the alleged enterprise." *Ortiz*, Docket No. 845 at 6; *see also Martinez*, 2014 WL 998183, at *4 (noting

---

[4] The language of the *Martinez* indictment was essentially identical to that challenged here: "Beginning on a date unknown to the Grand Jury but since at least the mid-2000s, and continuing up through and including the present . . . ." *Id.* at *1.

that the VICAR counts were sufficient, in part because they "explicitly incorporate by reference details about the [RICO conspiracy charged in] Count One").

As with Count One, Defendants argue that the VICAR conspiracy counts are fatally devoid of any specific factual allegations regarding the nature of the alleged conspiracies charged, such as which murders or assaults with deadly weapons Defendants agreed with each other to commit, and how they so agreed. Similarly, Defendants argue that the VICAR conspiracies alleged have not been placed within a sufficiently narrow time frame. Again, Defendants are mistaken because a fair reading of the Indictment indicates that Counts Four through Nineteen inform the VICAR conspiracy counts. As already noted, the substantive counts in the Indictment allege specific murders and assaults with deadly weapons – along with the dates on which those acts allegedly took place – committed in furtherance of the racketeering enterprise (*i.e.*, the 19th Street Sureños).[5] Hence, Defendants' citations to *United States v. Cooper*, No. CR-09-156-SI, 2014 U.S. Dist LEXIS 105617 (N.D. Cal. Jul. 31, 2014), and *United States v. Keuylian*, 23 F. Supp. 3d 1126 (C.D. Cal. 2014), are inapposite.[6]

Reading the Indictment holistically, as the Court must, the Court concludes that the VICAR allegations in Counts Two and Three contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). To the extent any

---

[5] Counts Two and Three further specify that the targets of the conspiratorial violence were "actual and suspected Norteños, actual and suspected members of other gangs, individuals who defied the will of the 19th Street Sureños, and individuals suspected of cooperating with law enforcement." Indictment at 59-60.

[6] Judge Illston dismissed the conspiracy charge in *Cooper* because "it fails to provide sufficient detail regarding when the alleged conspiracy took place, or any detail at all regarding who the alleged coconspirators were or any facts regarding what they were alleged to have done." 2014 U.S. Dist. LEXIS 105617, at *12. By contrast here, the Indictment lists by name and alias a number of alleged co-conspirators, and the allegations in Counts One through Three, particularly when read together with the allegations of Counts Four through Nineteen, put Defendants on sufficient notice of "when the alleged conspiracy took place," and "what they were alleged to have done." *Id. Keuylian* is likewise distinguishable – there the district judge determined that the indictment failed to describe any specific acts that violated the statute in question. 23 F. Supp. 3d at 1128. Notably, the crime at issue in *Keuylian* was not a conspiracy crime, and in any event, the Indictment here lists a number of specific acts that inform Defendants of the nature of the charged conspiracies. *Id.*

13

1 Defendant believes he cannot adequately prepare against these allegations at trial, Defendants may
2 bring an appropriate motion for a bill of particulars, as they have already done.[7]

3 C.      Defendants Have Not Established a Particularized Need for the Grand Jury Transcripts

4       Defendants ask, in the alternative, that this Court order the production of the grand jury
5 transcripts and instructions relating to Counts One through Three.  The Court denies Defendants'
6 request.  As noted above, the burden is on Defendants to show a "particularized need" for the
7 transcripts which "outweighs the policy of secrecy." *Walczak*, 783 F.2d at 857.  Moreover, "an
8 indictment regular on its face and returned by a legally constituted and unbiased grand jury is
9 presumed to be valid; the party challenging this presumption faces a heavy burden." *United States*
10 *v. Buffington*, 815 F.2d 1292, 1304 (9th Cir. 1987).

11       Defendants argue that they need to review the transcripts because they believe that the
12 Government is constructively amending the Indictment to charge (and ultimately convict)
13 Defendants based on conduct not actually presented to the grand jury. *See* Mot. at 23-24.
14 Defendants have made no showing, however, that the Government is, in fact, constructively
15 amending the Indictment.[8]  Rather, as the Government correctly points out in its opposition brief, the
16 Defendants' argument assumes its own premise:  Defendants claim that the grand jury could not
17 have been presented with the factual allegations the Government intends to prove at trial because the
18 Indictment is insufficiently factually specific, and thus Defendants need to review the transcripts to
19 confirm the alleged inadequacy of Counts One through Three. *See* Mot. at 24 (arguing that "Counts
20 One through Three are subject to dismissal for factual insufficiency and constructive amendment,
21 and defense counsel's review of the grand jury transcripts *will underscore* that the theories under
22 which the government seeks to proceed to trial were never presented to that body as required by the

---

[7] Indeed, the Court observes that the Government has already provided Defendants with much of the detail they now claim is lacking from the Superseding Indictment. Of course, as noted above, this Court cannot consider the Government's bill of particulars responses in determining whether the Indictment is legally sufficient. From a practical perspective, however, the Court notes that Defendants' main complaint in their motion to dismiss – that they do not know enough about the conspiracies charged to adequately defend themselves at trial – has already been largely ameliorated.

[8] Defendants' motion to dismiss the Indictment outright on this basis is also denied.

Fifth Amendment") (emphasis added). But the Court has determined that the Indictment *is* sufficiently factually specific;[9] thus there is no particularized need for Defendants to obtain the grand jury transcripts so that they can "confirm" that the grand jury did not pass on the factual allegations the Government intends to prove at trial. *See Pittsburgh Plate Glass Co.*, 360 U.S. at 400 (explaining that the "long-established policy" of grand jury secrecy is "older than our Nation itself," and thus the burden is on the defense to show with specificity a "particularized need" for disclosure "which outweighs the policy of secrecy"); *United States v. Reed*, 156 F.3d 1241 (9th Cir. 1998) ("A defendant's particularized need must be based on more than speculation.") (citing *Walczak*, 783 F.2d at 857).

## IV.    CONCLUSION

Hernandez and his co-defendants motion to dismiss Counts One through Three of the Indictment is denied. Hernandez's request that the Government produce grand jury testimony and instructions is also denied.

This order disposes of Docket No. 391.

IT IS SO ORDERED.

Dated: July 23, 2015

_____
EDWARD M. CHEN
United States District Judge

---

[9] One of the reasons the Court so concludes is because of the specific crimes alleged in Counts Four through Nineteen of the Indictment. Contrary to Defendants' contention, the Grand Jury presumably was presented with factual details of specific acts allegedly performed in furtherance of the racketeering conspiracy, as it indicted Defendants for a variety of specific murders, assaults, and more, in Counts Four through Nineteen.